MONARCH ELECTRIC & WIRE CO. v. NATIONAL CONDUIT & CABLE CO.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1905.)

No. 1,091.

CONTRACTS—ACTION FOR BREACH—QUESTIONS FOR JURY.

Defendant was a New York corporation engaged in manufacturing copper wire, maintaining an office in Chicago in charge of an agent. Plaintiff was an extensive manufacturer of electrical supplies, using large quantities of copper wire, having its office in Chicago. Its president, who had previously dealt with defendant through its Chicago office, called up the agent by telephone, and asked the price on 100,000 pounds of copper wire, and on being told asked the agent to enter plaintiff's order, saying he would send it in writing, to which the agent answered, "All right." The order was sent and received without objection, but subsequently, copper having in the meantime advanced in price, defendant refused to fill it, and plaintiff sued in assumpsit for breach of contract, introducing evidence showing the custom in the business and the previous course of dealing between the parties. *Held* that, whether the telephone conversation, supplemented by the written order, constituted a contract, in view of such custom and course of dealing, and also whether the agent of defendant was authorized to make the contract on its behalf, were questions for the jury, and that the direction of a verdict for defendant at the close of plaintiff's evidence was error.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 141–143.]

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Action of assumpsit for breach of contract in the failure of defendant in error to deliver to plaintiff in error, two hundred thousand pounds of copper wire. At the close of plaintiff's evidence in the Circuit Court, on motion made by defendant's counsel, the jury was instructed to return a verdict for the defendant; and upon this action of the court was assigned the error that constitutes the chief question in this case. The facts are stated in the opinion.

Albert N. Eastman, for plaintiff in error.

Gilbert E. Porter, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The plaintiff in error is a manufacturer of electrical supplies, using large amounts of copper, and do-

ing a business that reaches from one hundred and fifty to two hundred million dollars a year.

The defendant in error is a New York corporation engaged in the manufacture and sale of copper wire. For a number of years the defendant has maintained a Chicago office, in the charge of one H. E. Cobb, through whom the contracts in question were made.

The evidence tended to show that on January 24th, 1902, one Samuel Mankowitz, president of the plaintiff, who had had previous dealings for copper wire with the defendant through Cobb, called Cobb on the telephone, asking him for a price on one hundred thousand pounds of wire; that Cobb named twelve cents a pound; that Mankowitz said "enter my order"; that Cobb said "all right"; that Mankowitz then said "I will mail you the order, either during the day, or I will send it over"; and that on the same day Mankowitz sent to Cobb a writing as follows:

"Chicago, Jan. 24th, 1902.

National Conduit & Cable Co.,
    Mr. H. E. Cobb, Agent,
        Chicago, Ill.

Dear Sir:—
As per conversation with you this day, you may enter our order for 100,000 lbs. bare copper wire at .12lb, base f. o. b. New York, to be taken as needed, sizes to follow specifications. We agree to pay 5% interest for remaining amount we do not take within 30 days.
Trusting that this will be satisfactory, we are
            Yours very truly,
                MONARCH ELEC. & WIRE CO.,
                    [Signed]   H. SCHWAB,
                        *Secretary.*"

The evidence tended to show also, that on the morning of January 28th, Mankowitz called up Cobb, asking him again for a price on copper wire, to which Cobb replied that the price was the same as the last; that Cobb was then told to enter the plaintiff's order for one hundred thousand pounds, to which he replied "all right"; and that on the same day, the following paper was sent by the plaintiff to Cobb:

"Chicago, Jan. 28, 1902.

Mr. H. E. Cobb,
    Agent, National Conduit & Cable Co.,
        Chicago, Ill.

Dear Sir:—
As per conversation with you this morning, you will enter our order for 100,000 lbs., bare copper wire at .12 lb., f. o. b., factory, sizes to follow on specifications, to be taken within 30 days. We are
            Yours very truly,
                · MONARCH ELECTRIC & WIRE CO.,
                    [Signed]   H. SCHWAB,
                        "*Sec'y.*"

The evidence tended to show further, that on this latter date, January 28th, but after the conversation just related, Cobb called up the plaintiff on the telephone, saying that he had just received a wire from his house in New York, advising him that copper had advanced. Thereupon Mankowitz said "I am glad to hear it", to which Cobb replied, "well, you came in pretty lucky."

The day following, January 29th, Cobb wrote a note to the plain-

tiff, enclosing a letter received by him from the defendant in New York, which note, with the enclosure, are as follows:

> "The National Conduit & Cable Company,
> Chicago Office, 1501 Monadnock Building,
> January 29, 1902.
>
> Monarch Electric & Wire Co.,
>    135 S. Clinton St., City.
>
> Gentlemen:—
>
> Enclosed find letter from our New York office, referring to your order of January 24th for 100,000 lbs. bare copper wire. Please note contents and advise me at once whether you want us to accept your order under these terms.
>     Yours very truly,
>       [Signed] NATIONAL CONDUIT & CABLE CO.,
>         H. E. COBB."

> (Enclosure)
> "H. E. Cobb, Esq.,
>    Chicago, Ill.
>
> Dear Sir:—
>
> We have your favor of the 25th inst, enclosing your order No. 88 for the Monarch Electric Wire Co., Chicago, and in relation to this order, we beg to say that the only terms on which we would accept it would be cash on B/L, and that the total order must be taken before July 1st. We are doing nothing in connection with the order until we hear from you further.
>     Yours truly,
>       THE NATIONAL CONDUIT & CABLE CO.
>        [Signed] per G. G. O'CONNOR.
>
> P. S. We return herewith letter of the Monarch Elec. Co."

To which plaintiff answered as follows:

> "Chicago, Jan. 30, 1902.
>
> Mr. H. E. Cobb,
>    C/o National Conduit & Cable Co.,
>       Chicago, Ill.
>
> Dear Sir:—
>
> We are in receipt of your letter of the 29th inst., where you enclose letter from your New York office. Referring to the contents, we wish to say that the conditions and terms your New York office name, are entirely satisfactory to us, we of course expect you to allow us the usual cash discount.
>     Yours very truly,
>       MONARCH ELECTRIC & WIRE CO.,
>       [Signed] S. MANKOWITZ,
>         Pres."

This letter evidently was sent to New York; for on February 6th, Cobb received a letter written to him from the New York house on February 3rd, which read as follows:

> "In relation to the inquiry of the Monarch Electric & Wire Co. as everything in relation to this matter has passed through your hands already, we want you to see these people and tell them for us that their order has not been accepted, is not accepted now, and will only be accepted at the market price of copper when it is accepted, and with the understanding that the terms shall be net cash on B/L and no discount."

This letter Cobb enclosed to the plaintiff.

What has now been stated constitutes the transaction on which the action is based. From time to time plaintiff made out specifications, according to his contract as claimed, which defendant refused to fill; whereupon the action was brought.

Assuming that Cobb had authority to make a contract, the question that first arises is, Did the telephone conversations constitute

a contract? It will be seen that the conversations covered, in express terms, a number of pounds of copper and the price per pound, and nothing more; while the written order, in addition, stipulated that the delivery should be "as needed," the amounts not taken within thirty days to draw interest at the rate of five per cent. From this it is argued that Cobb's assent to the verbal proposal did not carry assent to the proposal as enlarged in the written order.

But the conversations over the telephone have a background in the customs of the trade and previous dealings; and in view of such background must receive their interpretation. Plaintiff was not a merchant merely; he was a manufacturer also—a manufacturer whose need for copper wire as material, corresponded, in amount and time, with the specific contracts he had undertaken. This the defendant must have had in mind, and we must assume that, possibly, at least, the dealing was on that basis. Indeed such was the proof of customs of trade and the previous dealing between the parties. The evidence tending to establish these facts should have gone to the jury; for from such evidence, in connection with the other facts shown, the jury would have been warranted in finding that the telephone conversations constituted a complete understanding not varied by the confirmatory notes.

Nor can we assume that the conversations over the telephone were meant simply as an offer, the acceptance of which was not understood to be binding, until submitted to the New York office. There is no direct evidence to that effect; and whether such was, or was not, in the mind of the parties, is a question of fact also that should have gone to the jury.

The next inquiry is, Did Cobb have authority, or was he held out to plaintiffs as having authority, to enter into the contract? Here, again, the question for us to determine is, not what the evidence establishes, but whether, upon the evidence submitted, the court should have sent the case to the jury.

The direction was given, not at the close of all the evidence, but at the close of the plaintiffs' evidence. The case stood, therefore, as if the plaintiffs' evidence being closed, the defendant had gone to verdict with no further evidence. In such posture, it seems to us, that the previous dealings between the parties, the letter heads showing that the office occupied by Cobb was the Chicago office of the defendant, the fixing by Cobb of defendant's name to communications, and the other facts of that character submitted, were competent evidence to constitute, and in the absence of explanation by defendant, sufficed to constitute, a prima facie case to go to the jury. Indeed, these facts being shown, had the defendant rested his case without explanation, a verdict in favor of the plaintiff might easily have been sustained on the ground of the reasonable and natural inference that, in the absence of explanation, the facts would carry.

The instruction to the jury under all the circumstances, was, in our judgment, erroneous, and the judgment of the Circuit Court is reversed, with instructions to grant a new trial.